This is Ford's appeal from a plaintiff's judgment in a rollover case, your honors. It's our request to the court that it reverse and remand for judgment in Ford's favor. The crux of this appeal, I think, is the extent to which an expert may rely on conclusions of other experts that never make their way into evidence. And in this case, the biomechanical expert for plaintiff, a woman named Martha Bedez, relied on two other experts, the reconstructionist, Mr. Caldwell, and the latch expert, Mr. Cantor, for two essential elements of her opinion. The problem is that the evidence did not come in through Caldwell or Cantor on which Ms. Bedez relied. And under Rule 703 of the Federal Rules of Evidence, an expert may rely on facts and data that's reasonably relied on in experts in the field, but she was not relying on facts or data. She was relying on conclusions of Mr. Caldwell and conclusions of Mr. Cantor that she said they told her. Now, there's a few problems with that. The first problem is that means that Ford is not entitled to cross-examine, because if they cross-examine Ms. Bedez, the answer is going to be, I got it from Cantor. And when Cantor doesn't testify about it, there's no cross-examination from him. You know, let me back up a little bit and understand what's going on here. I mean, I've read enough of this case to see that, and I've seen the little videos. So he's sitting in the second seat. It's a bench seat. He's sitting on the passenger side away from the driver. Correct. The bench has latches on either end. The latch on his end doesn't work properly or maybe is not latched. It's not clear to me. But it lets go when the thing rolls over. The seat belt is not attached to the floor, but rather merely to the seat and, I guess, to the ceiling, so that when it rolls over, the bench goes like this, kind of like on a lever or maybe just kind of an opening of a hatch. He hits his head on the ceiling of the roof of the car on the inside, and he ends up breaking his neck. In that general sense, does that describe the accident? That's essentially plaintiff's theory. Well, no, wait a minute. What part of that is wrong? The part that's disputed. There's no dispute that at least there's evidence to support the fact that the latch was not engaged at time of the accident or at the end. It's disputed whether it was unlatched by the EMTs who came or not. But there was disputed evidence whether the centrifugal motion forces would cause the seat to, quote, launch, as Ms. Bidez said. No, no, no. Let me back up because I think I'm saying things that are not controversial. The van rolls over, he hits his head on the ceiling, and he breaks his neck. That's correct. So far so good? Except that the experts testified there were two different locations where he could have hit his head, so the experts were not in agreement on that. But two different locations on the roof? Yes. So van rolls over, he hits his head on the roof, he breaks his neck. Correct. So far so good? Yeah. Okay. And so what we're fighting about is when did this happen? With what force did it happen? Was it related to the fact that the latch might have got loose? Or related to the defective roof. Now, Ms. Bidez testified that the injury was a combination, the simultaneous confluence of two events, the roof crushing in at the same time he's launched up, in her words, by the seat because the latch is not working on the passenger side. That was her theory. And her theory was that it had to be the combined velocity of the two events that caused his injury. And her theory was that those two events occurred in the first, roughly two-thirds of the first roll of the van, between 90 degrees and 135 degrees. The problem is there's no evidence when the roof crush occurred. What she testified to was that she basically heard it from Caldwell. When Caldwell went to testify when the roof crush occurred, there was an objection by Ford, and the objection was it was an undisclosed opinion. And the court said, well, I don't have any expert reports in this case, so let's take it up later. Let's move on to another topic. So a few pages later in the transcript, I think it's at RT-406, they come back to this because Caldwell's basically done testifying and says, do we need to let him go or, you know, do we have to come back and talk about this? And the plaintiff's lawyer says, I'm fine with his testimony as is. It is what it is. And so Caldwell never testified when the roof crush was coming in. Now, in their appellee's brief, what appellants or appellees say is, well, Ford knew that he had a supplemental report that we could have used. And so the objection was not well taken. And there's a couple answers to that. First, they didn't make that argument before the trial court when this exchange occurred. They just said his testimony is what it is and we're fine with it. And second of all, the supplemental report was late. It was invalid under Federal Rule 37. Let me get down to brass tacks again just so I can understand your theory of the case. What's your theory of the case as to how this injury occurred? Obviously, we have the injury, and you've got to have a theory as to why it happened and it wasn't your fault. That's correct. We did have a theory. We're not required to prove our theory. I know, but let me understand it, though. The theory that we had was, and this came in through Dr. Germain and Mr. Pizzioli, was that because the van is rolling due to the centrifugal motion forces, like if I swing a bucket of water, the water is going to stay in because it's going to go to the outside. As the van rolls, and he is carried up and out towards the passenger side where there is no roof deformation, and when the van hits on the roof, it's like the roof is between him and the road. So it's just like on this piece of paper, maybe soft, but it's got the road underneath. And so the theory was from Dr. Pizzioli was that at one and a half rolls, when the van came over, he hit his head up by the passenger roof rail at the time the roof was in contact with the ground. It's known as a diving injury. And one reason that Plankton's story... So you're saying he didn't hit the roof at all. He hit the passenger side rail. Up by the roof of the passenger side rail, yes, when it was in contact with the ground and that the force of the accident was sufficient to cause him to break his neck. And is it your theory that when he hit his head on the roof rail, the seat was attached? What Dr. Germain testified to, and he was one of Ford's witnesses, was two things. That because Mr. Pearson, who's a large man, he weighs 220 pounds, outweighed the seat, and because of the centrifugal motion forces, even if the latch is unlatched at the time of the accident, it still stays in contact with the floor as it's rolling through because the rollover is a very rapid event. So you're saying that he hits his head with the seat in place, and his neck is long enough that he can hit his head up there with his seat belt on and the seat properly in place. Is that your theory? Sure. Because in any rollover accident, people do hit their heads on the roof, even if they're restrained because they're given the seat belt and the body's a little bit flexible. So that's just a matter of fact in rollover accidents. That's just the way things are. So I don't want to – oh, I'm sorry, Your Honor. Go ahead. I don't want our argument to be seen as simply a substantial evidence argument. Our argument really is that Dr. Pedez didn't do the work required to give her opinion as to how the defects caused the harm to Mr. Pearson, and without her doing the work and then without it coming in through other experts, her opinion is not substantial in the sense that it could be credited to prove liability as to Ford. So we see this more as an evidentiary question that her opinion is not valid for the reason she doesn't get the reliance on Rule 703. And it's my understanding, then, that the evidence, if you will, which the expert upon which she relied, Dr. Caldwell, the evidence that he would have testified to did not come in either in his report or in the supplemental report, that none of that evidence got before the jury. That's, I understand, your argument. That is our argument, Your Honor. And because it didn't get before the jury, as an expert, she has no foundation upon which to suggest her theory of the accident. You have stated our theory better than we did, Your Honor. Well, no, I don't know I did that, but I'm just trying to make sure that I understand. So what you're really saying is, and I'm looking at Rule 703 now. If I look at Rule 703, 703 definitely does not allow her to testify about inadmissible evidence, but the fact that there was a supplemental report, does that make it admissible evidence upon which she can then testify? Well, the supplemental report didn't come into evidence because it was filed late and under Federal Rule Civil Procedure 37. It couldn't be used. And the plaintiff didn't really argue vociferously that it should be used. And I think there's a reason for that, because the evidence is in the argument that the supplemental report, in fact, contradicted the expert's deposition, where he testified he couldn't make that determination, and all of a sudden in the supplemental report that, in fact, never came in, he said he could. And that's why the absence of cross-examination is so critical here and why Dr. Badez can't rely on something told by another expert. And we've cited cases, I think they're mostly in our reply brief, for the proposition that as elastic as Rule 703 may be, it does not allow one expert to testify to the conclusions of another expert. And I think the reason for that, again, is this cross-examination. So I think we've talked about Caldwell. The same thing is true for Cantor. Dr. Badez testified in a couple of ways that she relied on Mr. Cantor for both how much the seat lifted and when it lifted. And Cantor was expressly testified on cross that he was not making any testimony about occupant movement. And he also didn't testify about when and how much the seat lifted. But Mr. Forrest did testify, didn't he, that the roof damage occurred the first time it hit the ground? What Forrest says is he thinks he heard that from Caldwell. And, again, that is not sufficient under Daubert. I don't think to be substantial evidence of when the roof crush occurred. Forrest, he was the guy who did this drop test. He did not do any dynamic testing. And he was not purporting to testify of his own work or of his own knowledge when the roof crush occurred. So there really is no evidence in that. And if I may, the plaintiff does spend a fair amount of time in the appeals brief trying to run away from the timing issue. And they say the issue is not timing. The issue is where. But I don't think you can read either the direct examination of Dr. Bedez, where she testifies he was injured very early in the rollover, or the cross where she commits to exactly when the timing was and say that the timing was not an issue. That was, in fact, the plaintiff's theory. And plaintiff needed that theory because even Dr. Bedez conceded that as the rollover got going, Mr. Pearson would be moved by the centrifugal forces up and out away from where she says he hit his head. And that's why. I should know the answer, but I don't. How far is that second seat where Pearson's sitting is the edge of that seat from the door? I know a lot of these vans, you know, there's a space so that people can get to the seat behind. So how far, what's the space between the edge of that seat and the door? I don't know it in inches, Your Honor. I know there was testimony that there was a gap between the seat and the door. In order to let people to get back. So it's clearly big enough to let people go back there. Right. And so he was not up against the door as you would be in a passenger car. There was that gap. So your alternative construction as to how the accident happened, not hitting the roof but hitting that window bar, is that he's got to come up and out and out far enough to get over that gap as well to get up high enough. He's heading up towards the passenger side where not towards the middle where Dr. Bedez says he had. So your theory is the seat's going up like this, assuming the latch lets go, your theory is the seat's tied here, it goes up like this. He's sitting here and his head is able to go far enough over there that it whacks that rail. His head is heading opposite to the center and heading towards the outside. Right. I think I'm out of time. I'd like to save questions. Well, let me. At the end of the day, then, given the deferential standard of review that we have, isn't there enough evidence to support the jury's verdict? That's the question. Yeah. That's the bottom line. And in support of that would be Dr. Bedez's testimony that relied in part, at least, upon the reconstructionist testimony. Well, our position, Your Honor, is that there's not enough evidence because Dr. Bedez's opinion cannot be credited because she made two assumptions she was not permitted to make under Rule 703, and therefore her opinion, which is necessary to prove liability as to Ford, is invalid. And with that, the verdict goes away. That's our essential argument. Let me ask you one question. The verdict goes away. What would be the result if we were to reverse the decision on the motion for directive or for judgment notwithstanding the verdict? Our view is that under the Weisskrim v. Marley case, which is a Supreme Court case, that this Court should direct for entry of judgment in Ford's favor on the theory that Planet was able to present her best case. Nothing prevented her from having Caldwell testify to what they now wish Caldwell testified to. Nothing prevented them from having Cantor testify to which they now wish Cantor could have testified to, and that they're not entitled to a do-over. Well, why is it that we need to do that, I guess? Weren't there two motions made at the time the motion for judgment notwithstanding the verdict was made? One was for a new trial and the other for that. And the district judge denied both, really. I mean, if he would go back and say, well, your decision on motion for judgment notwithstanding the verdict was wrong, what's to suggest that he can't then undo his motion for new trial? Well, I guess our view, Your Honor, is that if there is a motion for judgment that's a matter of law that's made and should be granted, that that moots the new trial motion. Now, I understand there's some justice. What case stands for that? I think the Weisskram case stands for that, Your Honor. Well, I don't know. I'll have to go back to it, but I think that's the best. I understand there's some measure of discretion here, but our view is that when you look at the factors outlined in Weisskram as to when it's proper to direct entry of judgment or not, we fit those factors. That's really our position. Thank you. Okay.  May it please the Court. Good morning, Your Honors. My name is Daniel DeLasso, and I represent Dax Pearson. Dax Pearson suffered a burst fracture of his cervical spine when the van rolled over, the roof crushed in, and the seat let go. And there was substantial evidence of all those factors.  Dr. Bodez's opinion rises or falls on the opinions of two other experts, Mr. Caldwell and Mr. Cantor, is simply misdirection. The reason for that is simple. Ford doesn't challenge the ability of Dr. Bodez to offer opinions about injury causation. Nor do they challenge her background training experience or foundation for talking about how much force it takes to create this injury. Nor do they challenge her evidence or foundation for saying what position the body would have to be in to create this injury. So we start with the fact that it's undisputed that it takes 1,500 pounds of force to create this injury. That's three-quarters of a ton of force. The second thing is that in order to create this injury, to shatter the spine and cause a piece of bone to be blown into the spinal column, you have to have the head, neck, and body aligned. They don't dispute that. They agree that Dr. Bodez can say that and can talk about that, which she did. And the third point is that this type of injury, according to Dr. Bodez, unchallenged, only occurs when you have roof crush. And Dr. Bodez demonstrated that by showing to the jury a series of tests done by General Motors in which those tests showed that the only time you get a load high enough to cause this type of injury is where the roof crushes. Now, with that in mind, the evidence that we have in this case that relies on nobody but Dr. Bodez is forensic as well. Recall that Mr. Pearson is found pinned by his seat with his head and neck aligned. Recall that there is blood from a broken nose. Recall that there is also identified by Dr. Bodez a scuff mark or tear in the headliner. But it seems to me that all of this evidence that you're now talking about, if you're really going to get there, has got to be argued to be stuff that a normal jury can decide would form a formation or a, if you would, the underlying foundation for what Dr. Bodez says. Without an expert, without somebody to say why it happened, and we don't have any expert. I looked all over in the evidence to try to find an expert to suggest why it happened. I'm still having a tough time understanding how Dr. Bodez could testify as to that. Well, Dr. Bodez could testify why it happened because of the forensics she identified herself and also because... She didn't do any reconstruction, correct? She did not, but... She relied on the reconstruction of Dr. Caldwell, correct? That's correct. And Dr. Caldwell couldn't get his reconstruction in. No, that's incorrect, Your Honor. He did get his reconstruction in. The plaintiffs were satisfied with his reconstruction. Well, I didn't see anything that suggested from Dr. Caldwell that he suggested that it happened in the first rollover or that the crush came in on the first rollover or any of that. It didn't come in. First of all, he did testify about the crush. He testified about the crush in the following manner. The court will recall that he talked about the amount of debris that was located at the first roof touchdown. That debris was all of the window glass out of the driver's side of the van. The undisputed evidence is that the windows don't break unless the roof crushes. Dr. Germain doesn't dispute that. No expert disputes that. So he testified that, look, at the first roof touchdown, we have all of this debris deposited, and there is so much deformation in the roof that even the bondo on the side comes out. Now, Dr. Germain doesn't dispute that. Regardless, when the injury occurred is not important to plaintiff's causation theory. Why? Because we have evidence of what happened. We have evidence of 1,500 pounds of load. We have evidence that the body was aligned. We have evidence that this only occurs when there is roof crush. And we have evidence of a head mark where that would occur. And Dr. Videz was qualified and did testify about the head mark. She also said that if you had, and this isn't challenged by the defense or for, that if you have three-quarters of a ton of load on somebody's head that is interacting with a roof liner that's made of fabric and kind of an insulation foam-type material, you will leave a mark. You can't avoid leaving a mark. And the only mark in that whole roof liner that I personally inspected, magnified and looked at, was right here, right by the blood, which tells us that's where his head was. It also tells us we know at the end of the event the roof is crushed there, that there was impact there where the roof crushed. The defense theory that it occurred to the right, there's simply no evidence to support it. There is none. There wasn't a single mark on the head liner. They ignored the fact that where they say the injury occurred, there's a three-inch air gap, so that in order for Mr. Pearson to get his head into the metal roof and get a 1,500-pound load, his head would have to go through three inches of this foam material to get to the roof, which would leave a mark. There was no mark. The other thing is the defense theory assumes that this centrifugal force caused everybody to go up and out to the right. That's simply not what happened in this case because there is a person sitting in front of Dax Pearson and there is a person sitting behind Dax Pearson on the passenger side. Neither one of them are hurt. Their seats are still attached at the end of the accident event. The only seat that's not attached at the end of the accident event is Dax's. And Dax is the only one with a burst cervical fracture that it takes 1,700 pounds of load to occur. So the timing issue is a misdirection. It didn't matter whether it was the first roll or the second roll because there was nothing distinct. Everybody agrees that the roof crush occurs in those first two rolls. The van touches down on its roof three times, once at the beginning, once in the middle, once at the end. And as I understand what you just told me, and I understand the record, we have the window glass and the Bondo where it rolled over the first time. That's correct, Your Honor. I understand what Bondo. I had to look it up. Bondo is the they must have repaired the car. That's the junk they put in when they're doing body work. They did. There was a piece on the side. That had been fixed earlier. Fixed earlier and it came out. But, counsel, I don't find any evidence in this record, if I don't go to Dr. Caldwell, that suggests that as the roof collapses, the seat comes unlatched. Again, Your Honor, that confluence is something that Ford thinks is important but the plaintiffs didn't because we know it happened. In any accident, there's not a camera on board. We don't know when exactly things happen, but we take the physical and forensic evidence that we have and we work backwards. We know that we have a crushed roof. We know that we have a mark on the roof. We know that it requires 1,500 pounds to create the injury. We know that if you put 1,500 pounds on something, you're going to leave a mark. And the reasonable inference from all of that evidence is that Dax hit his head on the roof there as the roof was crushing in, whether that was on the first roll or the second roll. And at the end of the rollover, is the van on its wheels? It's on its roof, Your Honor. So it's on its roof? It's on its roof. And so he's upside down and the latch is not latched then, so is his head in contact with the roof? Yes, his head is pinned against the roof with enough force that he can't breathe. The other piece of evidence we have about the first roll, Your Honor, that was not included in Ford's record is the testimony of Dax Pearson. The testimony of what? The testimony of the plaintiff, Dax Pearson, who said that as the van started to leave the road, he was sleeping and he heard something. He woke up. He noticed that the van was starting to slide off the road. He felt it tipping up. He put his hands up, felt it tip over, and immediately felt himself crash into the roof and was then paralyzed. And that's what he said. And that's in the record. And the reasonable inference from that is it occurred on the first roll. So the... Well, but I guess that also assumes the jury can make that determination without some expert testimony. Your Honor, I mean, the bottom line with Ford's argument here is that in order for your expert to testify, she has to have some expert testimony upon which to rely so that she can put this all together. And the bottom line is underlying that whole is that you can't do it without an expert, and so there without an expert, you can't do it at all. So what he says or what he doesn't say can't really be a foundation for her testimony unless you don't need expert testimony at all. But, Your Honor, you don't need expert testimony for Dr. Bedez's conclusion. She's an expert. She doesn't need... She didn't do any expert reconstruction. All she can say is this is the way I believe that there would be sufficient things to have happen, but when it happened or where it happened, she cannot testify to it. That's incorrect, Your Honor. She testified absolutely where it happened. She testified where it happened, where the headmark was in relationship to the blood, where the headmark was in relationship to the roof, all which falls absolutely within the purview of her expertise. She did not need a reconstruction from Mr. Caldwell that said which role this occurred on to offer her opinions. That's Ford's position, and it's simply wrong because we know he broke his neck. We know that to break his neck like this, you have to have roof crush. There's no roof crush where Ford said it happened. The experts testified that the roof crushed in the rollover. Some believe more on the first than the second. That doesn't make any difference because in order for him to get hurt, he's got to have roof crush, and he's got to be where the roof is crushing, and if that happens, there will be marks left behind, and that's what we had at the end of this accident, and we had an unlatched seat. The other fallacy in Ford's position is that 703 says that the opinion relied upon the expert has to be stated in court. The case we cite in the brief says an expert can rely on anything, including a conversation with another expert that occurs outside the court, and it's not required that you testify to every single basis. But you can't really suggest, even in the case that you cite, that one expert can come in and say, I talked to every expert on the block, and therefore I'm coming in, and I'm going to tell you everything that all those experts said, and I'm going to tell you what my opinion is. And that would be the theory you'd have to use if you're going to let her testify as to what happened in other experts' idea. But my point is, Your Honor, she is not doing that, nor did she need that. She merely said, I relied on the reconstruction of Mr. Caldwell, period. That's what she said. Ford's unhappy with what that reconstruction was. That doesn't mean she could not rely on it. And the only place that the reconstruction becomes an issue is on Ford's position that timing is critical. Well, that's not plaintiff's position. It was not our theory. Well, if it's not critical, then it doesn't matter on any reconstruction by Caldwell at all. All that matters is that there's a bit of evidence here, a bit of evidence here, and I am an expert enough to say this is what happened. It doesn't have to have a reconstructionist at all if you're really going where you're going. But the reconstructionist you have to have to talk about the vehicle movement, which is all Dr. Bedez needed. The vehicle movement and what's happening with the seat, it's unlatched and everybody agrees, that's all she needs to analyze how Dax moves. And we know the roof crushed. Caldwell testified about the roof crush. We had Mr. Forrest and Mr. Forrest's drop test showing how this roof crushes, what happens with the roof crush, how the windows break out. All that was before the jury. And, again, timing, this accident's about where he got hurt. He gets hurt left of center because the seat releases. We know he gets hurt there because that's where the roof crushed and that's where the scuff mark and that's where the blood is. And we know that's what happened. Whether the roof crushed two inches, four inches, eight inches on the first roll or second roll is not important to that conclusion. And it clearly wasn't important to the jury who unanimously found that the two defects in this vehicle that Ford now admits that this vehicle was defective in terms of the strength of its roof and the latching system of its seat were the substantial factor in causing Dax Pearson's injury. Every reasonable inference supports that. There was substantial evidence of it. There was a conflict between the experts about various things, but that's what experts do. But those conflicts are resolved, of course, in favor of the verdict. And unless there are any further questions, it's relatively clear this was a defective van and Dax Pearson was paralyzed because he was riding in a defective van where the roof crushed 16 inches into the occupant compartment and his seat didn't stay attached to the floor. And the person sitting in front of him and behind him whose seats stay attached didn't get hurt at all. Thank you. Okay. Thank you very much. Mr. Derivan, why don't we give you two minutes? We took you over, but let's have a go at two minutes. Thank you, Your Honor. Very quickly. First, Dr. Bedez testified, this is 587 of the RT. Question, three-eighths of a roll. You've testified it is over by then and he has received his injury. Answer, by that time. Question, that's what you told us in your deposition. Okay, I agree. Question, at no point after the three-eighths roll position do you believe he received any other injuries of significance in terms of your analysis. True. Answer, true. So if you take plaintiff's position that the jury could find that this injury occurred at any part of the rollover after when Dr. Bedez testified, then you're saying they don't need expert testimony. All they need is the fact that someone is injured in an accident, and that is insufficient under our law. So that's number one. The timing was important. It was a critical issue for Dr. Bedez, and there's no evidence of the roof crush timing. Second, counsel says it's undisputed that you require roof crush to cause this kind of an injury. It was not undisputed. Ford's experts testified otherwise. A small point, Dr. I think it was Caldwell who said that Bondo is very brittle, and on the record citation that they cite for when or where the glass and Bondo is deposited, there's no evidence in the testimony that the roof crush occurred then. What there is is there's some testimony that the door was somewhat banged up at that point, but if you look at that testimony, I think you'll see that it doesn't say the roof was. . . Was there window glass at that place also? Yes, some window glass. So we had a window breaking and the Bondo popping out. Yes, but the testimony doesn't say that's when the roof crush occurred, and, again, Caldwell didn't testify to that. I think those cover the main points I wanted to make in rebuttal, so if there's no more questions, I'll. . . Okay, thank you. Thank you, Your Honor. Thank you for good arguments on both sides. Pearson v. Ford Motor Company now submitted. You're not going to stay for the next case? The second feature is going to be a hell of a good one. Thank you. Just to add to the suspense, we'll take a ten-minute break and then we'll come back. Thank you. All rise.
judges: Mills, Fletcher W. , Smith N. R.